# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| **KAREN YOUNG,** ) | |
| ) | |
|    **Plaintiff,** ) | |
| ) | |
| **v.** ) | No. 3:07-cv-100 |
| ) | (Phillips/Shirley) |
| **PRUDENTIAL INSURANCE COMPANY** ) | |
| **OF AMERICA, d/b/a Prudential Financial,** ) | |
| **Inc.,** ) | |
| ) | |
|    **Defendant.** ) | |

## MEMORANDUM OPINION

This action under the Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, is presently before the court on plaintiff's motion for summary judgment [Doc. 8] and supporting memorandum [Doc. 9] and defendant's response in opposition to plaintiff's motion for summary judgment/defendant's cross-motion [Doc. 10]. For the reasons that follow, plaintiff's motion for summary judgment is denied and defendant's cross-motion for judgment is granted.

**I.     BACKGROUND**

Plaintiff Karen Young was employed as a retirement plans specialist by Sea Ray Boats, Inc., a subsidiary of Brunswick Corporation. Through this employment, plaintiff was covered by the long term disability ("LTD") benefits plan underwritten by defendant, Prudential Insurance Company of America, Inc. ("Prudential"). Brunswick Corporation served as the plan sponsor and administrator, while Prudential, in addition to underwriting the claim, served as the claims administrator.

Plaintiff was diagnosed with fibromyalgia in 1996 by her rheumatologist, Marvin Beard,

-1-

M.D. Plaintiff's primary care physician, Stephen Pershing, M.D., treated plaintiff for this condition, which steadily improved until October 2002, when plaintiff began presenting symptoms again, exacerbated by point stress and personal issues. In January 2003, plaintiff was diagnosed with a breast carcinoma, at which time she stopped working. Her symptoms at this time included pain, fatigue, migraines, weakness, numbness, blurred vision, soreness, diarrhea, lack of mobility, poor memory and concentration, and sleep disorders. Plaintiff underwent a lumpectomy in February 2003 and received radiation treatment through May 2003.

Plaintiff began receiving short-term disability ("STD") benefits on February 10, 2003. In June 2003, having determined that plaintiff had sufficiently recovered from her breast cancer, Prudential terminated her STD benefits and denied plaintiff's claim for long-term disability ("LTD") benefits. This latter determination was subsequently overturned on administrative appeal, and plaintiff began receiving LTD benefits in February 2004, retroactive to July 2003. Prudential determined that she was eligible for these LTD benefits due to her psychiatric condition(s).

Under the policy provisions, Prudential reviews every claim for benefits after twenty-four months of payments. Under the policy, after this initial twenty-four-month pay period, the requirements for disability become more stringent. To be disabled, the beneficiary must now be precluded from performing *any* gainful occupation for which he is qualified, in contrast to the initial determination of disability, under which a beneficiary need only be precluded from performing his *current* occupation. Disability due in whole or in part to mental illness, including depression, is also restricted to a twenty-four-month pay period. On July 26, 2005, Prudential determined that plaintiff continued to meet the requirements of disability and continued her LTD benefits, "provided that [she] remain totally impaired" under the terms of the policy. Upon reevaluation in June 2006,

Prudential again reviewed plaintiff's complaints of breast carcinoma, fibromyalgia, migraines, carpal tunnel syndrome, and severe depression. Prudential found that while plaintiff had "multiple somatic complaints," she nevertheless was able to "maintain a level of activity and use of [her] hands that demonstrates that [she has] the capability of performing sedentary work" with some restrictions, and therefore denied plaintiff further LTD benefits. Prudential also suggested occupations which it found matched plaintiff's ability to work.

Plaintiff appealed the decision through Prudential's appeals process. In each of the two appeals, Prudential additionally relied on a surveillance video taken of plaintiff in her garden, as well as an independent file review by a board-certified internist with a subspeciality in rheumatology. Prudential again determined that plaintiff was not disabled as defined by the policy; plaintiff was further denied benefits due to her depression, a condition for which disability benefits under the policy are limited to twenty-four months of payment. Having exhausted all administrative appeals, on March 21, 2007, plaintiff commenced the instant action.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). "A fact is material only if it might affect the outcome of the case under the governing law." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). Accordingly, this court must review the record under the rubric of applicable ERISA law to determine whether either party is entitled to judgment as a matter of law.

"As a general principle of ERISA law, federal courts review a plan administrator's denial

of benefits *de novo*, 'unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' " *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)). If the plan administrator has such discretionary authority, then a decision to deny benefits is reviewed "under 'the highly deferential arbitrary and capricious standard of review.' " *Id.* at 168-69 (quoting *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)). Such discretionary authority does not hinge on "magic words"; rather, courts are directed "to focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe the terms of the plan.' " *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (quoting *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1453 (D.C. Cir. 1992) (other quotations omitted)). The Sixth Circuit has therefore "consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.' " *Id.* (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994)).

Plaintiff has conceded that the arbitrary and capricious standard applies here, [Doc. 9 at 8], as the plan *sub judice* places the onus on Prudential to determine whether the beneficiary is disabled. This standard is applied as follows:

> The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the [c]ourt must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.

*McDonald*, 347 F.3d at 169 (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)); *accord, e.g.*, *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002); *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).

Yet the arbitrary and capricious standard does not make courts "rubber stamps for any plan

administrator's decision as long as the plan was able to find a single piece of evidence—no matter how obscure or untrustworthy—to support a denial of a claim for ERISA benefits." *McDonald*, 346 F.3d at 172. Rather, the court is obligated to make a review of both the quality and the quantity of the medical evidence and the opinions on both sides of the issues. *Id.* "[T]he ultimate issue in an ERISA denial of benefits case is not whether *discrete acts* by the plan administrator are arbitrary and capricious but whether its *ultimate decision* denying benefits was arbitrary and capricious." *Spangler*, 313 F.3d at 362 (emphasis added).

Accordingly, this court must examine Prudential's proffered explanation for denying LTD benefits to determine whether that decision was well-reasoned based on the evidence.

## III. ANALYSIS

Prudential defines "disability" under plaintiff's long-term disability plan as follows:

You are disabled when Prudential determines that

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- 
- you have a 20% or more loss in your *indexed monthly earnings* dues to that *sickness* or *injury*.
- 

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

...

We may require you to be examined by doctors, other medical practitioners, or vocational experts of our choice.... We can require examinations as often as it is reasonable to do so.

[A.R. at 46][1]. Further, disabilities based primarily on self-reported symptoms or due in whole or in part to mental illness, each to be determined by Prudential, are limited to a twenty-four-month pay

---

[1] "A.R." refers to the administrative record in this case, which defendant filed manually [Doc. 7].

period during the beneficiary's lifetime. [A.R. at 54].

### A. *Determination of Disability*

Plaintiff stopped work due to breast carcinoma, fibromyalgia, carpal tunnel syndrome, and depression. Prudential made the following determinations in denying plaintiff's LTD benefits. First, Prudential determined that plaintiff's breast carcinoma had already been treated and noted that her last mammogram was negative. Prudential found plaintiff's migraines, from which she suffered approximately once a week, were well controlled by medication. Although plaintiff's fibromyalgia appeared "worse" as of April 2006, there was no indication as to the extent to which plaintiff's capacity worsened; moreover, Indomethacin helped plaintiff's symptoms and her external tolerance was good. Prudential further found that plaintiff's alleged carpal tunnel syndrome was not substantiated, as she had only tested positive on an unrepeated Phalens test and other tests had not been performed. More tellingly, plaintiff regularly works in her garden and performs yard work, as evidenced by a surveillance video documenting plaintiff performing these activities with ease; however, plaintiff claims this merely provides brief moments of relief from her fibromyalgia symptoms. Prudential found this activity to be inconsistent both with plaintiff's claims of her functional capacity, as well as her claims of carpal tunnel syndrome, as gardening and yard work would aggravate plaintiff's symptoms if indeed she were suffering therefrom. Finally, Prudential found that other diagnoses in the record of primary osteoarthritis and hypertension indicated that plaintiff's hypertension was well controlled on medication and that her arthritis condition was not substantiated by medical records to be rheumatoid arthritis. [A.R. at 135-36].

Based on the above findings, Prudential determined that plaintiff was capable of performing a sedentary occupation "with restrictions of avoiding constant grasping, fingering, and handling,"

to accommodate plaintiff's mild to moderate osteoarthritis. [A.R. at 136]. Prudential identified the positions of "Supervisor, Credit and Collection" and "Bonding Agent." [*Id.*].

On plaintiff's first appeal, Prudential requested an independent file review by Paul F. Howard, M.D., a board-certified internist with a subspecialty in rheumatology. Dr. Howard found that "the available medical records fail to reveal any degree of functional impairment." [A.R. at 660]. Prudential again denied plaintiff LTD benefits. On plaintiff's second and final appeal, counsel for plaintiff submitted additional treatment notes by Dr. Pershing as well as a Functional Capacity Evaluation ("FCE") by Brenda Rasch, a physical therapist. Prudential again denied plaintiff's LTD benefits, finding that plaintiff's additional submissions did not reveal any new evidence confirming that plaintiff is disabled.

Plaintiff argues that this decision was arbitrary and capricious and therefore Prudential's decision is not entitled to deference by this court. The court will address each of plaintiff's arguments in turn.

Plaintiff first disputes Prudential's reliance on the surveillance video, seemingly arguing against its use in plaintiff's appeals without having first been a grounds for denial in Prudential's initial denial of benefits. As Prudential points out, however, plaintiff's claim is reviewed anew upon each appeal by a different analyst, without deference to the initial adverse benefit determination. 29 C.F.R. § 2560.503-1(h)(3)(ii) (2007) (claims procedures must "[provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinated of such individual"). Due to the lack of deference given prior adverse benefit determinations, as Prudential points out, it is hardly

surprising that an analyst would cite separate grounds for the denial than had previous analysts. Indeed, in the instant case the wealth of information upon which each analyst could draw merely serves to bolster Prudential's position that plaintiff was not entitled to LTD benefits, rather than to discredit its various denials as somehow inconsistent with one another.

Second, plaintiff argues that Prudential ignored Dr. Beard's assessment and plaintiff's statement concerning how gardening work and outdoor activity help her fibromyalgia symptoms. Plaintiff likewise argues that Prudential failed to consider the FCE conducted by a physical therapist at plaintiff's behest for use in the second and final appeal. A plan administrator, however, may choose to credit the opinion of one medical professional over another, as long as there is "a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). Here, Prudential did not discredit the FCE; rather, Prudential accounted for the physical therapist's findings in determining plaintiff to be able to perform sedentary work. Moreover, plaintiff's ability to garden and perform other yard work, even if recommended to help ease her fibromyalgia symptoms, further indicate her lack of disability. The mere fact that Prudential did not choose to give full credit to Dr. Beard's opinion or plaintiff's (self-serving) statement that her gardening simply eases her symptoms does not indicate that Prudential acted arbitrarily and capriciously. Rather, the fact that Prudential fully accounted for plaintiff's limitations indicates the contrary, namely, that Prudential carefully considered the totality of the evidence in denying plaintiff's claim.

Third, plaintiff argues that, contrary to Prudential's finding, plaintiff was unable to perform the material and substantial duties of her current employment and therefore qualified for LTD benefits under the contract. This argument is without merit. First, the policy defines "material and

substantial duties" as those duties "normally required for the performance of your regular occupation" and "that cannot be reasonably omitted or modified." [A.R. at 46]. While the contractual definition of plaintiff's position at Sea Ray indicates that her position "*may* require lifting and/or pushing 40+ pound boxes," [A.R. at 820 (emphasis added)], plaintiff herself noted that her job category is "sedentary," involving "negligible weight and mostly sitting." [A.R. at 807]. Accordingly, the duties "normally required for performance of your regular occupation" do not include heavy lifting, and due to the apparent infrequency with which plaintiff had to perform such heavy lifts, it appears that this is a requirement that could "easily be omitted" from the duties of a retirement plans specialist. The FCE indicated that plaintiff can tolerate sitting for two to three hours and requires frequent stretch breaks. Contrary to plaintiff's arguments, these findings do not indicate total disability; rather, plaintiff's tolerance for sitting, even with the need for frequent stretch breaks, supports Prudential's finding that plaintiff could perform sedentary occupations. Prudential therefore had a well-reasoned explanation for finding plaintiff capable of performing her current employment with the additional grasping and handling limitations imposed.

Yet plaintiff's vigorous arguments that she was unable to perform her current occupation are of little import. Regardless of whether plaintiff could perform her current employment, as Prudential points out, she was capable of performing the duties of *other* gainful employment for which she was qualified. Under the terms of the policy, after having received two years of payments, plaintiff must overcome this additional limitation in order to continue receiving disability benefits. [A.R. at 46]. While "[t]he mere possibility that a participant in an ERISA plan might be able to return to some type of gainful employment, in light of overwhelming evidence to the contrary, is an insufficient basis upon which to support a plan administrator's decision to deny that participant's claim for LTD

benefits," *McDonald v. Western-Southern Life Co.*, 347 F.3d 161, 170-71 (6th Cir. 2003), here there is no such "overwhelming evidence to the contrary." Indeed, the totality of the record indicates that plaintiff can perform sedentary work. The FCE submitted by plaintiff in support of her final appeal indicates that she is capable of performing tasks with a maximum lift of twelve pounds. Prudential suggested sedentary occupations for which plaintiff is qualified and further accounted for her limited dexterity due to her osteoarthritis. Because plaintiff was capable of performing these gainful occupations, she did not meet the more stringent definition of "disabled" under the policy after two years of receiving payments. Accordingly, Prudential had a well-reasoned basis for denying plaintiff's claims.

Finally, plaintiff objects to Prudential's decision to use an independent file review, rather than "require plaintiff to be examined by doctors, other medical practitioners or vocational experts." [Doc. 8 at 14]. This argument is likewise without merit. As the Sixth Circuit recently stated in *Rose v. Hartford Financial Services Group, Inc.*, "[a]lthough [the] decision to conduct file reviews of [plaintiff's] records—rather than a physical examination—is a factor that must be considered in determining whether [defendant[ acted in an arbitrary and capricious manner, there is 'nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination.' " *Rose v. Hartford Fin. Servs. Group, Inc.*, No. 07-5423, 2008 WL 648965, at \*6 (6th Cir. Mar. 11, 2008) (quoting *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005)).

Indeed, *Rose* was a case remarkably similar to the instant action, in which plaintiff's multiple ailments included fibromyalgia. In affirming that the denial of benefits was not arbitrary and capricious, the Sixth Circuit noted,

> In his file review, Dr. Popovich acknowledged Rose's fibromylagia, chronic fatigue syndrome, and hepatitis C, but noted that Rose's medical records did not document any functional impairments with respect to Rose's upper extremities, lower extremities, or spine. Additionally, Dr. Popovich noted that

> Rose's medical conditions are well-controlled, as evidenced by the surveillance video demonstrating that Rose is capable of the activities of daily living, including traveling, walking, lifting, and carrying.

*Id.*

Similarly, in the instant action, Dr. Howard determined that "[d]iagnostic and medical studies fail to reveal any abnormality to account for any impairment, particularly MRI scan of the lumbar spine dating back to November 2002 showing only minimal degenerative changes at LS-S1." [A.R. at 658]. Further, Dr. Beard noted that plaintiff's "medical conditions are well-controlled, as evidenced by the surveillance video" in which plaintiff

> spends up to 30 minutes in a kneeling or seated position without cushion and is seen standing up demonstrating excellent, strength, valance, and tone on several occasions without aid and, fact, spends up to nearly one hour working on a chair in a seated position utilizing her hands in reaching, pulling, and prying positions.

[A.R. at 659-60].

In sum, given that Prudential offered many reasoned bases for its decision to deny plaintiff's benefits, this court will defer to its decision.

### B. *Other Grounds for Restriction of Plaintiffs Disability Benefits*

Independent grounds further demonstrate that Prudential's denial of disability benefits was not arbitrary and capricious. Prudential denied plaintiff's benefits under the additional policy restrictions that claims due primarily to self-reported symptoms or in whole or in part to mental illness are restricted to a twenty-four month payment period. [A.R. at 54].

Prudential argues in its brief that one reason for denying plaintiff's LTD benefits was that her condition was based primarily on self-reported symptoms; having already received twenty-four months of payments, the policy restricted her from receiving any further benefits. Yet the three letters to plaintiff explaining each denial of her benefits [A.R. 134-38, 143-46, 152-55] do not indicate that this was a grounds for limiting her benefits; rather, in denying her benefits, Prudential

-11-

seems simply to accord more or less weight to the determinations of the various doctors. This court therefore does not find this to be a reasoned explanation for denying plaintiff's benefits, and accordingly will not defer to the administrator's decision on that basis.

Prudential did, however, have well-supported grounds to deny plaintiff further benefits due to her severe depression. Under plaintiff's policy, "[d]isabilities which, as determined by Prudential, are due *in whole or in part* to **mental illness** also have a limited pay period during your lifetime.... The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime." [A.R. at 54 (first emphasis added)]. Mental illness is defined as "a psychiatric or psychological condition regardless of cause. Mental illness includes ... depression ...." [A.R. at 55].

Plaintiff has a well-documented history of depression [*e.g.*, A.R. 197, 211, 229, 236, 322, 328, 333, 388], variously categorized as "severe" and "profound" [*e.g.*, A.R. 211, 218] or "nearly suicidal" [A.R. 201]. While plaintiff has been prescribed anti-depressants [*e.g.*, A.R. 225 (prescribed Effexor XR and Wellbutrin XL, both anti-depressants); A.R. at 368 (plaintiff on Wellbutrin since 1996)] and has sought some counseling [*e.g.*, A.R. 322], it appears she has failed to seek full treatment [*e.g.*, A.R. at 95 ("[Y]our mother called us to advise your therapist wanted you admitted to the hospital for psychiatric treatment, but you would not go."); A.R. at 368 ("Has generalized anxiety symptoms. Never sought pyschiatric help.")]. This history fully supports Prudential's decision to terminate her LTD benefits as "due in whole or part to mental illness" [A.R. at 54], whether as additional support for the denial or as separate grounds justifying termination. Consequently, the decision was not arbitrary and capricious, and this court will defer to Prudential's denial of plaintiff's benefits.

seems simply to accord more or less weight to the determinations of the various doctors. This court therefore does not find this to be a reasoned explanation for denying plaintiff's benefits, and accordingly will not defer to the administrator's decision on that basis.

Prudential did, however, have well-supported grounds to deny plaintiff further benefits due to her severe depression. Under plaintiff's policy, "[d]isabilities which, as determined by Prudential, are due *in whole or in part* to **mental illness** also have a limited pay period during your lifetime.... The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime." [A.R. at 54 (first emphasis added)]. Mental illness is defined as "a psychiatric or psychological condition regardless of cause. Mental illness includes ... depression ...." [A.R. at 55].

Plaintiff has a well-documented history of depression [*e.g.*, A.R. 197, 211, 229, 236, 322, 328, 333, 388], variously categorized as "severe" and "profound" [*e.g.*, A.R. 211, 218] or "nearly suicidal" [A.R. 201]. While plaintiff has been prescribed anti-depressants [*e.g.*, A.R. 225 (prescribed Effexor XR and Wellbutrin XL, both anti-depressants); A.R. at 368 (plaintiff on Wellbutrin since 1996)] and has sought some counseling [*e.g.*, A.R. 322], it appears she has failed to seek full treatment [*e.g.*, A.R. at 95 ("[Y]our mother called us to advise your therapist wanted you admitted to the hospital for psychiatric treatment, but you would not go."); A.R. at 368 ("Has generalized anxiety symptoms. Never sought pyschiatric help.")]. This history fully supports Prudential's decision to terminate her LTD benefits as "due in whole or part to mental illness" [A.R. at 54], whether as additional support for the denial or as separate grounds justifying termination. Consequently, the decision was not arbitrary and capricious, and this court will defer to Prudential's denial of plaintiff's benefits.

## IV. CONCLUSION

Because Prudential offered a well-reasoned explanation for its decision to deny plaintiff benefits, that denial was not arbitrary and capricious. Accordingly, this court will uphold Prudential's decision. Plaintiff's motion for summary judgment [Doc. 8] is **DENIED** and defendant's cross-motion for judgment [Doc. 10] is **GRANTED**.

**IT IS SO ORDERED**.


**ENTER:**


s/ Thomas W. Phillips
United States District Judge